**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY SCOTT LYBARGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-00731-CV-W-DGK** |
| | ) | |
| **JOHN E. POTTER, Postmaster General,** | ) | |
| **UNITED STATES POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 61), Plaintiff's Suggestions in Opposition (Doc. # 70), and Defendant's Reply Suggestions (Doc. # 76). For the reasons set forth below, Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED in part and DENIED in part.

### I.    Procedural and Factual Background

Plaintiff Jeffrey Lybarger was employed by the United States Postal Service ("USPS") as a letter carrier at the James Crews Station in Kansas City, Missouri from approximately September 1995 until October 2007. The defendant is John Potter, Postmaster General for the USPS. Plaintiff initiated this proceeding on September 28, 2007, by filing a Complaint in this Court. His Complaint alleges violations of the Civil Rights Act of 1991 ("Title VII") and the Rehabilitation Act of 1973, and consists of three counts: Count I - Rehabilitation Act (claims for failure accommodate and disparate treatment); Count II - Retaliation; and Count III - Constructive Discharge. Each count

1

alleges causes of actions resulting from three different Equal Employment Opportunity ("EEO") administrative complaints. For the purpose of clarity, the Court will address each of Plaintiff's claims as they appear in Plaintiff's prior administrative complaints.

### A.    2000 EEOC Judgment

Plaintiff filed a formal EEO complaint alleging disability discrimination when the USPS instructed him to change the way he carried his route between January 28, 1998 and November 10, 1998, which did not allow him to take flexible breaks to monitor his Type 1 (insulin-dependent) diabetes. On May 18, 2000, Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge ("ALJ")  Barry Shalinsky found that Plaintiff's diabetes qualified him as "disabled" under the Rehabilitation Act. ALJ Shalinsky held that the USPS discriminated against Plaintiff under the Rehabilitation Act by failing to make an accommodation for flexible breaks  during the relevant time period. He concluded that Plaintiff failed to make a *prima facie* showing of discrimination based on disparate treatment or reprisal for engaging in protected EEO activity. The USPS adopted the decision of ALJ Shalinsky by a Notice of Final Action on June 23, 2000.

### B.    The First Administrative Complaint- No. 4E-640-0003-05
(September 2-3, 2004 Events)

Plaintiff was provided with reasonable accommodation to take flexible breaks to test his blood sugar, administer insulin and take nutrition from June 23, 2000 until approximately spring of 2004. Sometime in early 2004, management changed at the James Crew Station. Plaintiff claimed

2

that Station Manager Robert Roberts and Supervisor Pat Mahoney questioned the necessity of giving Plaintiff flexible breaks despite ALJ Shalinsky's 2000 decision.

On November 16, 2004, Plaintiff filed an EEO complaint alleging disability discrimination and retaliation for engaging in prior EEO activity when (1) on September 2, 2004, he was instructed by Supervisor Pat Mahoney to change his break schedule to take his two authorized breaks at specific times despite the 2000 EEO decision and letters from his physician indicating a need to take breaks on an as needed basis to monitor his diabetes; and (2) as a result of Supervisor Pat Mahoney's instruction limiting his break schedule he suffered a hypoglycemic attack on September 3, 2004. Plaintiff was notified on December 15, 2004 of the acceptance of his complaint and the specific issues under investigation, claims of disability discrimination and retaliation.

Shortly thereafter, Plaintiff's union steward, David Teegarden, filed a grievance on his behalf pursuant to Article 2 of the Collective Bargaining Agreement between the USPS and the National Associate of Letter Carriers ("NALC") alleging discrimination and retaliation against Plaintiff for the events which occurred on September 2 and 3, 2004. On January 4, 2004, a Joint Step A Grievance Settlement was executed by USPS management and the NALC, on behalf of Plaintiff, which instructed the management at the James Crews station of the USPS to abide by ALJ Shalinsky's 2000 EEO decision providing for flexible breaks or comfort stops to administer insulin or take nutrition on an as needed basis.

On June 11, 2007 ALJ Lisa Thompson issued a decision in this case. She determined that the USPS did not fail to reasonably accommodate Plaintiff's disability by prohibiting him from flexible breaks. While the USPS may have mishandled the situation surrounding Plaintiff's September 3,

3

2004 hypoglycemic attack, ALJ Thompson found that none of the actions complained of by Plaintiff were attempts by the USPS to intentionally deny him flexible breaks or to punish him for his prior EEO action.

### C.     The Second Administrative Complaint- No. 4E-640-0046-05
### (2005 Events)

On June 28, 2005, Plaintiff filed a second administrative complaint alleging that Station Manager Robert Roberts and Supervisor Sondra Glover discriminated against him based upon his disability and retaliated against him for prior EEO activity when (1) between February 17-26, 2005, Plaintiff's Family Medical Leave Act ("FMLA") requests were denied; (2) on March 29, 2005, Plaintiff was issued a letter of warning for irregular attendance; (3) on February 28, 2005, Plaintiff was charged absent without leave; (4) on March 10, 2005, Plaintiff was given a questionnaire by Supervisor Sondra Glover regarding irregular absence; (5) on February 15, 2005, Plaintiff was denied leave for an emergency dental appointment when the caps on Plaintiff's two upper front incisors broke off and had to be replaced with new appliances; (6) on January 25, 2005, Plaintiff was not allowed to work as scheduled because Supervisor Glover stated that he had not cleared the medical unit after being on sick leave thereby being denied pay for work that day; and (7) on February 7, 2005, Pamela Jackson, an Inspector with the Office of Inspector General ("OIG"), repeatedly called Plaintiff's physician's office regarding his FMLA certifications per the advice of USPS management, which resulted in gross interference with his doctor/patient relationship causing him to have to find another physician for treatment of his diabetes.

4

By order dated April 26, 2006, ALJ Thompson dismissed Plaintiff's claim of discrimination and retaliation when, from February 17-26, 2005, his requests for FMLA leave were denied, because the EEOC lacked subject matter jurisdiction over Family and Medical Leave Act claims.

On June 11, 2007, ALJ Thompson issued a decision in this case. She held that the USPS had legitimate, non-retaliatory reasons for the actions taken against Plaintiff and that he failed to establish pretext. ALJ Thompson further concluded that Plaintiff failed to establish that the actions taken by the USPS were motivated, in whole or part, by his disability of prior EEO activity. The USPS issued a Notice of Final Action adopting the decision of ALJ Thompson on June 25, 2007.

### D. The Third Administrative Complaint- No. 4E-640-0032-07 (November 2006 Events)

Plaintiff filed a third administrative complaint on January 25, 2007. Complaint No. 4E-640-0032-07 involves allegations that Plaintiff was discriminated against by Station Manager Harlan Wesley and Area Manager Carl Norwood when, on or around November 1, 2006 and ongoing, Station Manager Wesley and Area Manager Norwood changed the standard operating procedure for all carriers with regard to break times and locations, thereby denying him flexible breaks to test his blood sugar, administer insulin and take nutrition pursuant to the 2000 EEOC judgment. Plaintiff further claimed that his union stewards, David Teegarden and Jean Fields, met with Station Manager Wesley and, having no positive resolution, met with Area Manager Norwood, who allegedly refused to honor the 2000 Final Agency Action and his accommodation. Plaintiff claimed their actions were in retaliation for his three prior EEO complaints.

5

On August 3, 2007, the EEOC issued a Final Agency decision on this Complaint. The EEOC accepted Plaintiff's claim for disability retaliation, but rejected his claim for retaliation because Plaintiff failed to reallege this issue in his formal administrative complaint. The EEOC concluded that Plaintiff failed to establish a *prima facie* case for disability discrimination.[1]

Plaintiff applied for disability retirement benefits on June 15, 2007. His last day of work at the USPS was on March 12, 2007, although he was officially separated from the USPS on October 12, 2007, as a result of disability retirement.

## II.    Standard

Because Defendants have submitted, and the Court is considering, information outside the four corners of the Complaint, the Court treats Defendants' Motion as one for summary judgment. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp*., 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

---

[1] Although the EEOC dismissed Lybarger's claim for retaliation, it addressed this claim in the Final Agency Decision.

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

### III. Analysis

### A. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff has not administratively exhausted his claims for constructive discharge (Count III) and the allegations set forth in paragraphs 25 and 26 of his Complaint.

Before a plaintiff may file a complaint in federal court alleging violation of Title VII and the Rehabilitation Act, he must first exhaust his administrative remedies. Both the Rehabilitation Act and Title VII require an administrative claim be filed before a suit can be filed. *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003); *Morgan v. United States Postal Service*, 798 F.2d 1162, 1164-65 (8th Cir. 1986). Exhausting administrative remedies requires the timely filing of a charge with the EEOC and receiving a right to sue letter. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996). After completion of this process, the requirement is met "for allegations asserted in the administrative charge, as well as allegations 'like or reasonably related' to those asserted in the administrative charge." *Shannon*, 72 F.3d at 684; *see also Satz v. ITT Financial Corp.*, 619 F.2d 738, 742 (8th Cir. 1980)(holding that a plaintiff can file suit in federal court under Title VII for claims "like or reasonably related to" the substance of the charge filed with the EEOC); *Snyder v.*

7

*Saberliner Corp.*, 101 F.Supp.2d 1239, 1248 (E.D. Mo. 1999)("A plaintiff is deemed to have exhausted his administrative remedies only as to those allegations contained in the judicial complaint that are like or reasonably related to "the charges submitted to the EEOC."). Allegations outside the scope of the EEOC charge circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed. *Gage*, 2008 WL 4332202, at *2 (E.D. Mo. Sept. 17, 2008) (citing *Duncan v. Delta Consol. Indus., Inc.*, 371 F.2d 1020, 1025 (8th Cir. 2004)).

"The Court must liberally construe the charge when determining whether a particular claim has been exhausted, and '[t]he breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.'" *Gates v. City of Lebanon*, 585 F.Supp.2d 1096, 1099 (W.D. Mo. 2008) (citing *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000). While an EEOC charge must be liberally construed, it will not be read to include a charge that is not present. *Davis v. Paradies Concessions II Arch, Inc.*, 2006 WL 2077575, at *2 (E.D. Mo. July 24, 2006).

### 1.    Constructive Discharge

It is undisputed that Plaintiff never filed an administrative charge alleging constructive discharge. Plaintiff argues that exhaustion of this claim should not be required because his constructive discharge claim is merely an end result of the retaliation against him by the USPS. Plaintiff further contends that Defendant was aware of his claims of constructive discharge when he received Plaintiff's resignation letter, in which he claimed he was forced to resign. Plaintiff maintains that Defendant has been aware of his claim for constructive discharge since the filing of his Complaint, and has had ample opportunity to seek discovery on this issue.

8

In his previous EEO administrative complaints, Plaintiff presented the EEOC with issues relating only to disability discrimination and retaliation, not constructive discharge. Since he did not present the constructive discharge claim to the EEOC, he failed to exhaust his administrative remedies. Additionally, the claims for disability discrimination and retaliation asserted in each of his administrative complaints were raised before Plaintiff stopped working and before he filed for disability retirement. Liberally construing the charges Plaintiff filed with the EEOC, it cannot be said that they are like or reasonably related to his claim for constructive discharge in the Complaint before the Court. *See Snyder*, 101 F.Supp.2d at 1248-1249 ("there is no automatic connection between allegations of age, retaliation, and sex discrimination and a claim for wrongful discharge."). Furthermore, Plaintiff's EEOC claims never put the USPS on notice that he was raising a claim of constructive discharge. *See Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986)(the purposes of the charge requirement are to allow informal resolution and to give the employer notice of the claim); *Lockridge v. HBE Corp.*, 543 F.Supp.2d 1048, 1057 (E.D. Mo. 2008)("the information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify the general basis for the claim.")(citing *Wallace v. DTG Operations*, 973 F.2d 664, 668 (8th Cir. 1992)). As such, the Court finds that Plaintiff failed to exhaust his administrative remedy with regard to Count III of his Complaint for constructive discharge.

### 2. Other Claims (Paragraphs 25 and 26 of the Complaint)

Defendant argues that Plaintiff failed to administratively exhaust the allegations set forth in paragraphs 25 and 26 of the Complaint. In paragraph 25 of his Complaint, Plaintiff alleges that in the fall of 2006 his attorney received a large envelope from the James Crews Station containing

9

copies of Judge Shalinsky's 2000 decision and the Final Agency Decision, copies that had been stored at the Plaintiff's "case" for distribution to the succession of new managers.  Paragraph 26 of Plaintiff's Complaint alleges that an unidentified USPS station manager intercepted and returned a G-10 postal "penury" envelope that was used to return Plaintiff's responses to the investigator's questions.  Plaintiff relies on these claims in support of his allegations in Count I - Rehabilitation Act, Count II –Retaliation, and Count III - Constructive Discharge of his Complaint.  Because the allegations set forth in paragraphs 25 and 26 of the Complaint are factual in nature, the Court finds that summary judgment is not appropriate at the stage of the proceedings.  *See Koehn v. Indian Hills Cmty. College*, 371 F.3d 394, 396 (8th Cir. 2004) (where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate).

## B.      Complaint No. 4E-640-0003-05 (September 2-3, 2004 Events)

Defendant contends that he is entitled to summary judgment on the claims set forth in Complaint No. 4E-640-0003-05 for two reasons:  (1) these claims were the subject of the January 5, 2005 grievance settlement, entered into on Plaintiff's behalf, between the USPS and NALC; and (2) Plaintiff has failed to establish a *prima facie* case for disability discrimination on the basis of disparate treatment, failure to accommodate and retaliation.  The Court will address each argument separately.

### 1.      Grievance Settlement

Defendant argues that Plaintiff should be precluded from asserting claims involving the events of September 2-3, 2004 because these issues were resolved by the January 5, 2005 Joint Step A Grievance Settlement.  Plaintiff contends that the grievance settlement should not preclude him

10

from pursuing his claim because (1) the grievance process was delayed by five months, due to the misconduct of the station managers and (2) the grievance settlement was made without his or his union steward's participation. Since neither Plaintiff nor Defendant has provided the Court with a copy of grievance settlement, the Court is unable to determine the parameters of the grievance settlement or conclude whether the settlement was intended to be the final resolution of Plaintiff's claims. Based upon the pleadings before the Court, summary judgment is not proper at this stage of the proceedings.

### 2. *Prima Facie* Case of Disability Discrimination

The Rehabilitation Act, which expressly applies to federal agencies and programs receiving federal financial assistance, protects disabled employees from discrimination and requires that covered employers provide reasonable accommodation to disabled employees. *See* 29 U.S.C. §§ 791-796. The Rehabilitation Act encompasses two forms of discrimination, disparate treatment and failure to accommodate. *See Peebles v. Potter*, 354 F.3d 761, 765-766 (8th Cir. 2004). "Depending on which kind of discrimination is at issue, different burden-shifting analyses are applied." *Id*. "The allocation of burdens of production and persuasion between the plaintiff and the defendant, in turn, affects the analysis of a summary judgment motion made by the defendant." *Id.* At 766.

### i. Disparate Treatment

Plaintiff raises the issue of disparate treatment in his deposition testimony. He has not, however, plead a claim for disparate treatment nor is there any evidence to support this cause of action. Therefore, the Court will not address this issue.

### ii. Failure to Accommodate

With a claim for failure to accommodate, discrimination under the Rehabilitation Act occurs if "a covered entity [does] not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). Reasonable accommodation claims are evaluated under a modified burden-shifting analysis. *Peebles*, 354 F.3d at 766. Discrimination is framed in terms of the failure to fulfill an affirmative duty, the failure to reasonably accommodate the disabled individual's limitations. *Id.* at 767. The Rehabilitation Act compels employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts. *Id.* Accordingly, discrimination under the Rehabilitation Act occurs when the employer fails to abide by a legally imposed duty. *Id.* The known disability triggers the duty to reasonably accommodate. *Id.* If the employer fails to fulfill the duty, it is irrelevant whether or not the employer was motivated by the disability. *Id.*

To establish a *prima facie* case for disability discrimination based upon failure to accommodate, a plaintiff must show that (1) the employer knew the plaintiff was disabled, (2) plaintiff requested an accommodation, (3) the employer did not make good faith attempts to assist plaintiff in making the accommodation and (4) the employer could have reasonably accommodated the plaintiff. *See Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000); *Didier v. Schwan Food Co.*, 465 F.3d 838, 841 (8th Cir. 2006).

12

Plaintiff claims that he was discriminated against, based on his disability, when the USPS denied him the opportunity to take flexible breaks as ordered by the 2000 EEOC decision. He claims that the USPS was aware of his disability, as he provided management with numerous letters from his treating physician documenting his diabetes. Plaintiff contends that the denial of flexible breaks caused him to suffer a hypoglycemic attack on September 3, 2004.

Defendant does not dispute that: (1) Plaintiff was disabled; (2) Plaintiff was meeting the legitimate expectations of his job; (3) management at James Crews Station knew he was disabled; (4) Plaintiff requested the accommodation of flexible breaks; and (5) the USPS could reasonably accommodate him with flexible breaks. Defendant maintains, however, that the USPS made good faith efforts to accommodate Plaintiff.

The Court finds that a genuine factual dispute exists as to whether the USPS made a good faith attempt to reasonably accommodate Plaintiff. As such, summary judgment on this claim is denied.

### 3.    Retaliation

Title VII prohibits employers from retaliating against employees for opposing any discrimination made unlawful by Title VII, or for making a charge or participating in any manner in an investigation or proceeding under Title VII. 42 U.S.C. § 2000e-3(a); *see Barker v. Missouri Dep't of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008). For claims of retaliation where direct evidence is unavailable, the *McDonnell Douglas* burden-shifting analysis applies. *Bakhatiari v. Lutz*, 507 F.3d 1132, 1137-1138 (8th Cir. 2007). Direct evidence is evidence that establishes a specific link between the alleged discriminatory animus and the challenged decision, sufficient to

13

support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (citing *Puttman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).

As such, the plaintiff bears the burden of establishing a *prima facie* case of retaliation. *Gage*, 2008 WL 4332202, at *9; *see also Higgins,* 481 F.3d at 589. If plaintiff establishes his *prima facie* case of retaliation, the burden shifts to the employer to produce some legitimate, nondiscriminatory reason for the adverse action. *Gage*, 2008 WL 4332202, at *9. If the employer satisfies this burden, the plaintiff then must demonstrate that the proffered reason is a pretext for retaliation. *Id.* The ultimate burden rests with the plaintiff to establish that his employer's adverse action was in retaliation for plaintiff's protected conduct. *Id.*

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between two events. *Gilooly*, 421 F.3d at 739.

Because there is no direct evidence, either direct or circumstantial, showing a specific link between Plaintiff and any alleged retaliatory practices prohibited by Title VII, the burden-shifting analysis set forth in *McDonnell Douglas* applies. The evidence before the Court demonstrates that Plaintiff had previously engaged in protected activity and that the denial of flexible breaks constitutes an adverse employment action taken against him. However, Plaintiff fails to establish that a causal connection exists between the denial of the flexible breaks and the 2000 EEO judgment. Plaintiff claims that Station Manager Robert Roberts and Supervisor Pat Mahoney, under the direction of Kansas City Postmaster John Coolidge, were retaliating against him for the 2000 EEO

14

decision when they denied him the right to take flexible breaks. Plaintiff relies upon two conversations between January and March of 2001 with Rosemary Goldblatt, head of the Postal Education Development Center, and Thad Miller, a former James Crews Station Manager as the basis for his claims. He asserts that Rosemary Goldblatt and Thad Miller told him that he was not being used as a certified trainer for a James Crews training program at the direction of John Coolidge because he was a less than desirable employee. Plaintiff, however, has provided no support for those conversations. The mere fact that Plaintiff had a previous EEO decision is insufficient to establish an inference of retaliation. Inasmuch as Plaintiff has failed to establish a *prima facie* case for retaliation, Defendant is entitled to summary judgment on this issue.

### C.    Complaint No. 4E-640-0046-05 (2005 Events)

The heart of Plaintiff's second administrative complaint is that the USPS retaliated against him based upon his prior EEO complaints when he was denied FMLA leave, issued a letter of warning for failing to meet attendance requirements, charged absent without leave, denied leave to go to a dental appointment, not allowed to return to work, given a questionnaire that probed his medical conditions and investigated for allegations of fraud. Defendant does not dispute that Plaintiff engaged in statutorily protected activity. Rather, he maintains that reasonable employees would not have found such actions materially adverse, or in the alternative, the materially adverse actions were not causally linked to the protected conduct.

A thorough review of the evidence reveals that Plaintiff has failed to establish a *prima facie* case for retaliation. It is undisputed that Plaintiff has engaged protected activity. However, he fails to satisfy the third and/or fourth elements necessary to establish a *prima facie* case for retaliation.

15

In his first allegation, Plaintiff claims that the USPS retaliated against him by denying his requests for FMLA leave between February 17-26, 2005. He does not, however, provide any evidence that the USPS denied his request in retaliation for his prior EEO complaints.

In his second allegation, Plaintiff claims that the March 29, 2005 letter of warning that Supervisor Sondra Glover issued to Plaintiff for failure to meet attendance requirements was meritless. The evidence demonstrates that Plaintiff was disciplined for excessive tardiness. Plaintiff challenges the attendance policy, but does not offer sufficient evidence to demonstrate that the USPS disciplined him for reasons other than his tardiness.

In his third allegation, Plaintiff claims that on February 28, 2005 he was charged absent without leave in retaliation for his prior EEO activity. The record reveals that Plaintiff was charged absent without leave when his message regarding his whereabouts on February 9, 2005 was not revealed to his supervisor. Plaintiff has not offered any evidence to demonstrate that USPS management intentionally withheld the information regarding his absence or that his supervisor was aware of his prior EEO activity.

In his fourth allegation, Plaintiff claims that the questionnaire given to him by Supervisor Sondra Glover on March 10, 2005, regarding irregular attendance constitutes *per se* retaliation because one of the questions in the questionnaire asks whether the employee suffers from a serious health problem. There is disagreement as to how and why Plaintiff was given this questionnaire regarding irregular attendance. It is undisputed, however, that Plaintiff refused to answer the questionnaire and was not subject to disciplinary action as a result. Therefore, Plaintiff did not suffer an adverse employment action.

In his fifth allegation, Plaintiff claims that on February 15, 2005, when he submitted a request for 2.25 hours of leave without pay to go to a dental appointment, Supervisor Sondra Glover denied his request. Plaintiff claims that Supervisor Sondra Glover denied his request because his services were needed and threatened him with a letter of warning if he went to the dental appointment. The record reveals, however, that Plaintiff went to his dental appointment and received 1.61 hours of leave time that was categorized as "stress leave/FMLA." Supervisor Glover stated that she was not allowed to approve a request for leave without pay because Plaintiff had other leave time available. In his deposition testimony, Plaintiff acknowledged that he was not subject to disciplinary action as a result for leaving for his dental appointment that day. Plaintiff has offered no evidence to establish that he suffered an adverse employment action or that Supervisor Glover was aware of his prior EEO activity.

In his sixth allegation, Plaintiff claims that he was not allowed to work as scheduled on January 25, 2005 because Supervisor Sondra Glover stated that she had not received his clearance to return to work by the USPS medical unit after Plaintiff returned from sick leave, thereby denying him pay for that day. The record reveals that Supervisor Sondra Glover located Plaintiff's medical release later that day and granted him with administrative leave. Therefore, Plaintiff suffered no adverse employment action.

In his seventh allegation, Plaintiff alleges that on February 7, 2005, Pamela Jackson, an Inspector with the OIG repeatedly called his physician, Dr. Susan Laningham, and her staff to verify the authenticity of nine FMLA return to work certifications pursuant to the advice of USPS management. He claims that this investigation resulted in gross interference with his doctor/patient

17

relationship and caused to have to find another physician for the treatment of his diabetes. Plaintiff's assertions are contrary to the evidence. The record reveals that (1) the investigation was not initiated by USPS management; (2) Dr. Laningham stated that she and her staff had only been contacted on two occasions by Ms. Jackson, and neither she nor her staff were harassed by Ms. Jackson; (3) Dr. Laningham does not recall ever having discussed the OIG investigation with Plaintiff; (4) the OIG investigation did not affect her treatment of Plaintiff; and (5) when asked why she stopped treating Plaintiff for his diabetes, Dr. Laningham stated that his insurance changed, and she was no longer on his list. Plaintiff has offered no evidence to dispute this.

Plaintiff has failed to establish a *prima facie* case for retaliation. As such, Defendant is entitled to summary judgment on this claim.

### D.      Complaint 4E-640-0032-07 (November 2006 Events)

In the third administrative complaint, Plaintiff alleged that he was discriminated based upon his disability by Station Manager Harlan Wesley and Area Manager Carl Norwood in November 2006 at a "stand-up" meeting when they changed the standard operating procedures for all letter carriers with regard to break times and locations. The change in standard operating procedure effectively denied him flexible breaks to monitor his diabetes. Plaintiff also asserted that Station Manager Wesley and Area Manager Norwood refused to honor the 2000 EEO judgment and his accommodation. Plaintiff alleged that these actions were in retaliation for his prior EEO activity.[2]

_____

[2] The Court notes that Plaintiff has made inconsistent statements regarding this claim. In his administrative complaint, No. 4E-640-0032-07, Plaintiff asserts that he was first denied flexible breaks on November 1, 2006. In his Complaint before this Court, Plaintiff alleges that a James Crews acting station manager denied him flexible breaks on June 22, 2006. Yet, in his January 27, 2009 deposition testimony, Plaintiff claims that he was first denied flexible breaks in September 2006. The Court will only consider Plaintiff's assertions based upon the facts

18

Defendant claims that he is entitled to summary judgment on this these claims because Plaintiff has failed to establish a *prima facie* cause of disability discrimination on the basis of disparate treatment and failure to accommodate. Defendant further contends that Plaintiff has not established a *prima facie* case of retaliation.

Plaintiff articulates his claim in terms of a failure to accommodate cause of action, rather than a claim for disparate treatment. As such, the Court will analyze his claim under the failure to accommodate analysis.

### 1. Failure to Accommodate

To establish a *prima facie* case for disability discrimination based upon failure to accommodate, a plaintiff must show that (1) the employer knew the plaintiff was disabled, (2) plaintiff requested an accommodation, (3) the employer did not make good faith attempts to assist plaintiff in making the accommodation and (4) the employer could have reasonably accommodated the plaintiff. *See Cravens*, 214 F.3d at 1021; *Didier*, 465 F.3d at 841.

Defendant does not dispute that Plaintiff has satisfied the first and second prongs of his burden of proof. Rather, he contends that Plaintiff has not established that the USPS failed to accommodate his disability, as he was always allowed to take breaks, as needed, to monitor his diabetes. In the event that Plaintiff was instructed not to take flexible breaks, Defendant asserts that Plaintiff chose not to follow that instruction, and was never disciplined for failing to do so.

---

alleged in the administrative complaint. As such, the Court will disregard Plaintiff's assertions that he was first denied flexible breaks in June and September 2006.

In support of this argument, Defendant points to affidavits provided by Station Manager Wesley and Area Manager Norwood during the EEO investigation. Station Manager Wesley's affidavit testimony states that, to the best of his knowledge, Plaintiff was never denied flexible breaks to monitor his diabetes. In Area Manager Norwood's affidavit, he states that because he was not Plaintiff's direct supervisor, he had no knowledge of his break schedule.

Defendant also relies on Plaintiff's deposition testimony where he acknowledges that despite instructions by Station Manager Wesley in the "stand-up" directing all carriers to take breaks at a specific time and location, he continued to take flexible breaks to check his blood sugar, take insulin and eat snacks from November 1, 2006 until the end of his employment with the USPS. Plaintiff also explained that between August 2006 and December 15, 2006, he was not carrying mail on his route because he was on light duty after having been bitten by a dog. On light duty his routine would consist of casing mail in the morning, and in the afternoon he would spend five or more hours driving in a van picking up mail. Therefore, Plaintiff was not subject to the same break schedule as other letter carriers.

There is nothing in the record to substantiate Plaintiff's claim that he was denied the opportunity to take flexible breaks to monitor his diabetes. As such, Plaintiff has not established a *prima facie* case for failure to accommodate, and Defendant is entitled to summary judgment on this claim.

### 2. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or

her; and (3) a causal connection exists between two events.  *Gilooly*, 421 F.3d at 739.

Again, it is undisputed that Plaintiff engaged in statutorily protected activity.  He has not, however, established that an adverse employment action was taken against him.  Even assuming that Plaintiff suffered an adverse employment action, he has not established the requisite causal connection.  Both Station Manager Wesley and Area Manager Norwood stated in affidavits that they were not aware of Plaintiff's prior EEO activity.  Plaintiff has produced no evidence to the contrary.  Thus, Plaintiff has failed to satisfy the second and third prongs of his *prima facie* case for retaliation.  Therefore, Defendant is entitled to summary judgment on this issue.

### III.    Conclusion

For the reasons explained above, Defendant's Motion for Summary Judgment is **DENIED** as to the allegations set forth in paragraphs 25 and 26 of the Complaint and Plaintiff's claim for failure to accommodate asserted in Complaint No. 4E-640-003-05; and **GRANTED** as to all other claims.


**IT IS SO ORDERED.**

  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

DATED:  August 4, 2009